# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENNY CARRERO, | : |
| | : |
| Petitioner, | : |
| | : |
| v. | :     Civ. Act. No. 15-600-LPS |
| | : |
| DANA METZGER, Warden, and ATTORNEY | : |
| GENERAL OF THE STATE OF DELAWARE, | : |
| | : |
| Respondents.[1] | : |

---

Denny Carrero. *Pro se* Petitioner.

Sean P. Lugg, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Attorney for Respondents.

---

## MEMORANDUM OPINION

September 24, 2018
Wilmington, Delaware

---

[1]Warden Dana Metzger has replaced former Warden David Pierce, an original party to this case. *See* Fed. R. Civ. P. 25(d).

STARK, U.S. District Judge:

Pending before the Court is an Application For A Writ Of Habeas Corpus Pursuant To 28

U.S.C. § 2254 ("Petition") filed by Petitioner Denny Carrero ("Petitioner"). (D.I. 3)  The State has

filed an Answer in opposition.  For the reasons discussed, the Court will dismiss the Petition.

## I.   BACKGROUND

On November 30, 2010, Petitioner pled guilty to one count of trafficking in cocaine (less

than 100 grams) and one count of the lesser included offense of trafficking in cocaine (10-50 grams).

(D.I. 12 at 4)  On that same day, the Superior Court sentenced Petitioner to an aggregate of 20 years

at Level V incarceration, suspended after 10 years for decreasing levels of supervision.  (*Id.*)

Petitioner did not file a direct appeal.

On December 30, 2010, Petitioner filed a motion for post-conviction relief pursuant to

Delaware Superior Court Criminal Rule 61 ("Rule 61 motion").  (D.I. 12 at 5)  On January 6, 2011,

he moved to withdraw his guilty plea and, on February 11, 2011, he moved for modification of his

sentence.  (*Id.*)  The Superior Court denied Petitioner's motion for modification of sentence on

February 22, 2011, and denied both his Rule 61 motion and the motion to withdraw his guilty plea

on June 23, 2011.  (*Id.*)  Petitioner did not appeal those decisions.  Petitioner filed a second motion

for modification/correction of sentence on March 22, 2013, which the Superior Court denied on

April 10, 2013.  (D.I. 15-20 at 4)  He did not appeal that decision.

On March 13, 2014, Petitioner filed his second Rule 61 motion, which the Superior Court

summarily dismissed on April 2, 2014.  (D.I. 15-20 at 5)  Petitioner filed an appeal.  Soon thereafter,

the State provided Petitioner with supplemental discovery, *i.e.*, the chain of custody report regarding

the drug evidence that was sent to and tested at the Office of the Chief Medical Examiner

("OCME") in this case.  (D.I. 3 at 47)  The Delaware Supreme Court affirmed the Superior Court's

denial of Petitioner's second Rule 61 motion on May 21, 2015. *See Carrero v. State*, 115 A.3d 1214 (Table), 2015 WL 3367940, at *3 (Del. May 21, 2015).

In July 2015, Petitioner filed a 15-page form § 2254 Petition with 150 pages of attached exhibits. (D.I. 3)  The form Petition asserts the following four grounds for relief: (1) Petitioner's Fourth Amendment rights were violated because the "search warrants obtained and carried out were done on the wrong locations and vehicles, thereby making them illegal" (D.I. 3 at 5); (2) Petitioner's rights under the Fifth and Sixth Amendments were violated because "evidence reports and . . . the police report clearly show discrepancies that occurred with the OCME case [and the discrepancies] show evidence tampering took place [b]y the State acquiescing to the fact and convicting individuals [whether] by plea bargains or trials.  The State cannot positively prove there was no tampering in this case with the evidence" (D.I. 3 at 7); (3) Petitioner's Fourteenth Amendment/Equal Protection rights were violated because the "court abused its discretion" and because of "prosecutorial misconduct" (D.I. 3 at 8); and (4) Petitioner's rights under the Fourteenth Amendment were violated, because the "withholding of critical evidentiary problems as stated in the OCME investigation and [] questionable ethics by [its] employees have affected the credibility of [] the evidence reliability [] [and] the effectiveness of the judicial system by what appears to be a covering up for illegal mistakes" (D.I. 3 at 10).  The last part of each of the four Claims contains Petitioner's handwritten statement "see attached exhibits." (D.I. 3)  The State filed an Answer also argues that the Petition should be dismissed in its entirety as time-barred. (D.I. 12 at 6-10)  The State's Answer also asserts that, if the Petition is not dismissed as time-barred, all four claims should be dismissed as procedurally barred. (D.I. 12 at 10-13)  Finally, the State alternatively argues that Claims One and Three should be dismissed as non-cognizable Fourth Amendment Claims, and that Claims Two and Four should be denied for failing to satisfy § 2254(d). (D.I. 12 at 13-17)  Petitioner filed a Reply,

2

arguing that relief should be granted because of the corruption "within the State's own mechanisms" (D.I. 19 at 3), as demonstrated by the fact that the police did not have a search warrant and that the evidence in his case should not have been used because the OCME evidentiary scandal casts doubt on its reliability (D.I. 19 at 4).

## II.   BACKGROUND INFORMATION RE: OCME CRIMINAL INVESTIGATON

As summarized by the Delaware Supreme Court, the relevant information regarding the OCME evidence mishandling is set forth below:

> In February 2014, the Delaware State Police ("DSP") and the Department of Justice ("DOJ") began an investigation into criminal misconduct occurring in the Controlled Substances Unit of the OCME. The investigation revealed that some drug evidence sent to the OCME for testing had been stolen by OCME employees in some cases and was unaccounted for in other cases. Oversight of the lab had been lacking, and security procedures had not been followed. One employee was accused of "dry labbing" (or declaring a test result without actually conducting a test of the evidence) in several cases. Although the investigation remains ongoing, to date, three OCME employees have been suspended (two of those employees have been criminally indicted), and the Chief Medical Examiner has been fired.
>
> There is no evidence to suggest that OCME employees tampered with drug evidence by adding known controlled substances to the evidence they received for testing in order to achieve positive results and secure convictions. That is, there is no evidence that the OCME staff "planted" evidence to wrongly obtain convictions. Rather, the employees who stole the evidence did so because it in fact consisted of illegal narcotics that they could resell or take for personal use.

*Brown v. State*, 108 A.3d 1201, 1204-05 (Del. 2015).  On June 6, 2014, the Delaware Department of Justice sent a letter to Petitioner stating that one or more individuals in the chain of custody for his case was indicted on criminal charges resulting from the OCME investigation.  (D.I. 15-8 at 1)  The letter further stated that the State had no evidence that the drugs in Petitioner's case were compromised.  (D.I. 15-8 at 1)

## III.   CONSTRUCTION OF PETITIONER'S CLAIMS

While the Court has a duty to liberally construe a *pro se* petitioner's filings, the Court does not have a duty to add arguments that a petitioner did not actually include in his petition. *See Castillo v. McCain*, 2017 WL 1232444, at *4 (E.D. La. Feb. 9, 2017) ("It is neither required nor appropriate for a court to scour a state-court record to divine the issues that a petitioner is attempting to raise in his petition."). "Mere reference in a federal petition to various state-court records or incorporating by reference grounds raised in attached exhibits is insufficient." *Castillo*, 2017 WL 1232444, at *4. Considering that there are 150 pages of exhibits attached to Petitioner's form Petition,[2] and considering that the exhibits penned by Petitioner assert numerous arguments, the Court concludes that Petitioner's statement "see attached exhibits" does not identify with sufficient particularity specific facts to articulate separate additional claims from the four Claims set forth in the form Petition. *See Ross v. Williams*, 896 F.3d 958, 967 (9th Cir. 2018).   In other words, the Court does not view Petitioner's statement "see attached exhibits" as incorporating all the arguments asserted in those exhibits.   For instance, although Petitioner presented an ineffective assistance of trial counsel claim on post-conviction appeal (D.I. 3 at 91-93; D.I. 15-16 at 2-4), he does not raise that claim in the instant Petition.   Rather, the Court views his statement "see attached exhibits" as an  attempt to amplify the specific arguments asserted in the four Claims contained on the form Petition.

The Court's construction of Petitioner's Claims does not correspond with the State's construction.   For example, given the reference to the OCME scandal, the State characterizes Claims

---

[2]The exhibits include copies of Petitioner's handwritten submissions to the Delaware Supreme Court on post-conviction appeal (D.I. 3 at 16-41, 64-71, 82-98, 105-10); transcripts, search warrant, police report, and lab report provided by Petitioner (D.I. 3 at 114-54); the State's filings in the Delaware Supreme Court during Petitioner's post-conviction appeal (D.I. 3 at 42-63, 74-81); and Delaware state court orders and/or opinions in his Rule 61 proceeding and post-conviction appeal (D.I. 3 at 72-73, 99-104, 111-13).

Two and Four as arguing that Petitioner's guilty plea was rendered invalid because the State violated
*Brady v. Maryland*, 373 U.S. 83 (1963), by not informing him of the OCME evidence mishandling
prior to his pleading guilty. (D.I. 12 at 10)  The State's construction of the two Claims in its Answer
mirrors the State's interpretation of one of Petitioner's arguments during his post-conviction
appeal.[3] (D.I. 15-15; D.I. 16-1)  However, after reviewing the allegations in all four Claims in
conjunction with the relevant corresponding arguments in the exhibits, the Court cannot concur
with the State's characterization of Claims Two and Four in this case.[4]  Rather, using the exhibits
that were actually penned by Petitioner to amplify and supplement the arguments in the original
Petition, the Court interprets the four Claims in the Petition as asserting the following arguments:
(1) Petitioner's Fourth Amendment rights were violated because the search warrants were illegal
(D.I. 3 at 5, 17-18 (Arguments I, II, III), 23-37); (2) Petitioner would not have pled guilty if he had
known about the discrepancies in the weight of the drugs as set forth in the police report and the
medical lab report -- and the fact that two employees in the chain of custody for the drug evidence
in his case were later indicted in connection with the OCME scandal demonstrate that the State
cannot prove that there was no evidence tampering in this case (D.I. 3 at 7, 18 (Argument IV), 68-

---

[3]The Court also notes that, on post-conviction appeal, the Delaware Supreme Court identified the
OCME scandal/involuntary plea argument as one of the claims presented by Petitioner, and also
identified his challenge to the denial of his suppression motion as a separate argument. *See Carrero*,
2015 WL 3367940, at *1-2.  After holding that Petitioner's guilty plea was knowing, voluntary, and
intelligent, the Delaware Supreme Court did not reach Petitioner's "other claims challenging the
Superior Court's ruling on his suppression motion and alleging ineffective assistance of counsel and
prosecutor misconduct during the plea proceedings." *Carrero*, 2015 WL 3367940, at *2.

[4]The State's characterization of Claims Two and Four ignores the fact that, in his post-conviction
appeal, Petitioner actually raised two claims based on the OCME evidence mishandling scandal:
(1) that his motion to suppress the drug evidence would have been successful if the State had
revealed the OCME evidence mishandling prior to, or during, the suppression hearing (D.I. 15-12 at
11; D.I. 15-14 at 3); and (2) that he may not have entered a guilty plea if he had known about the
OCME evidence mishandling (D.I. 15-14 at 2, 4; D.I. 15-16 at 17).  Given his ability to articulate
two distinct OCME arguments in his post-conviction appeal, the Court interprets Petitioner's
inclusion of only one of the OCME arguments in this case as intentional.

70, 90, 96); (3) the prosecution engaged in misconduct by permitting the introduction of the evidence when it knew the search warrants were illegal and the trial court abused its discretion in denying the motion to suppress (D.I. 3 at 8, 18 (Argument IV), 38-40); and (4) the trial court would have granted his motion to suppress if the OCME evidence mishandling scandal had been revealed prior to Petitioner's suppression hearing, because the evidence mishandling revealed by the OCME investigation casts doubt on the reliability of the evidence in Petitioner's case, undermines the integrity of the judicial system, and "adds credence" to Petitioner's argument that the drug evidence was inadmissible (D.I. 3 at 10, 68-69, 84).

## IV.    FOURTH AMENDMENT VIOLATIONS

In Claim One, Petitioner contends his Fourth Amendment rights were violated when the Superior Court declined to suppress evidence in this case. In Claim Three, he contends that the prosecutor engaged in misconduct by presenting evidence obtained via the allegedly illegal search warrant. For the following reasons, the Court concurs with the State that these Claims assert non-cognizable Fourth Amendment arguments that must be dismissed as barred by *Stone v. Powell*, 428 U.S. 465, 494 (1976).

Pursuant to *Stone*, a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts. *See Stone*, 428 U.S. at 494.; *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim – and, therefore, avoids the *Stone* bar -- if the

6

state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, the Petitioner filed a pre-trial motion to suppress the evidence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure, and the Superior Court denied that motion only after conducting a hearing. This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment claim in the Delaware state courts. The fact that Petitioner disagrees with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Moreover, Petitioner does not contend that a structural defect exists in Delaware's criminal process preventing a full and fair litigation of his suppression issues. Therefore, the Court will deny Claims One and Three as barred by *Stone*.

## V.    TIMELINESS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). AEDPA's limitations period is subject to statutory and equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling). Petitioner's § 2254 Petition, filed in 2015, is subject to the one-year limitations period contained in § 2244(d)(1). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA's limitations period, "like any other statute of limitations provisions, must be applied on a claim-by-claim basis." *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004).

Petitioner does not allege, and the Court cannot discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D) for Claims One, Two, and Three.[5] Therefore, the one-year period of limitations for Claims One through Three began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

However, Petitioner's contention in Claim Four that he would have succeeded in suppressing the drug evidence if he had been informed about the evidence mishandling at the OCME prior to the suppression hearing could be construed as an attempt to show the revelation of the OCME scandal was a "newly discovered" factual predicate triggering a later starting date of the limitations period under § 2244(d)(1)(D). Although Congress did not define the term "factual predicate" as used in § 2244(d)(1)(D), the Third Circuit has defined "factual predicate" as "vital facts

---

[5]Although Claims One and Three are by *Stone*, the Court will also alternatively dismiss them as time-barred. In Claim Two, Petitioner contends that he would not have pled guilty had he known about the discrepancies in the weight of the drugs as set forth in the police report and the lab report, both of which he had access to when he entered his plea. Petitioner does not assert that the he would not have pled guilty had he known about the OCME evidence scandal at that time, only that the OCME evidence mishandling scandal precludes the State from proving that the evidence in his case was not tampered with. Consequently, the Court does not view Claim Two's reference to the OCME evidence scandal as requiring a determination as to whether Claim Two is entitled to a later starting date under § 2244(d)(1)(D).

8

underlying [petitioner's] claims." *McAleese v. Brennan*, 483 F.3d 206, 214 (3d Cir. 2007). As further explained by the Second Circuit, "if new information is discovered that merely supports or strengthens a claim that could have been properly stated without the discovery, that information is not a 'factual predicate' for purposes of triggering the statute of limitations under § 2244(d)(1)(D)." *Rivas v. Fischer*, 687 F.3d 514, 535 (2d Cir. 2012).

Considering the totality of the circumstances, the Court concludes that knowledge of the OCME scandal qualifies as a "vital fact" for Claim Four under § 2244(d)(1)(D) only if: (1) the drug evidence in Petitioner's case was tested by the OCME; (2) he received the results of that testing before moving to suppress the evidence; and (3) he challenged the chain of custody, identity, and/or reliability of the drugs in his suppression motion. Then, in order for the OCME scandal to trigger a later starting date for Claim Four under § 2244(d)(1)(D), Petitioner must show that, exercising due diligence, he could not have learned that the evidence in his case may have been part of the compromised drug evidence involved in the OCME scandal until the State informed him of the OCME problems.

Petitioner has satisfied some components of, but not all, of this burden. The drugs were tested by the OCME, Petitioner received the results of the test prior to moving to suppress the evidence, and the Court accepts that he could not have learned about the OCME scandal until June 6, 2014, the date on which the State fulfilled its *Brady v. Maryland* obligation with respect to the criminal investigation of the OCME by informing Petitioner that "one or more persons in the chain of custody for drug evidence [in Petitioner's case] has been indicted for charges related to the OCME investigation."[6] (D.I. 15-8 at 1) However, as discussed in connection with Claim Two,

---

[6]The State provided defense counsel with the police report on July 6, 2010 and the OCME report on September 8, 2010. (D.I. 15-15 at 2) Both reports identified the drugs as cocaine. (D.I. 15-18 at 35-36, 40-42) The OCME report indicated two samples of cocaine weighing 167.71 grams, and three

Petitioner had access to the OCME report and the police report prior to filing his suppression motion, and there is a discrepancy between the weight of the cocaine listed in those reports. Given this discrepancy, Petitioner could have included in his suppression motion a challenge to the reliability of the drug evidence and/or the chain of custody. However, the suppression motion focused entirely on the validity of the search warrant, and did not challenge the reliability of the drug evidence or the chain of custody. (D.I. 16-2 at 1-2) At best, then, the existence of the OCME scandal is evidence that would have supported or strengthened a potential challenge to the reliability of the drug evidence that Petitioner did not raise at that time despite having a factual basis to do so. *See Rivas*, 687 F.3d at 535. After viewing these circumstances in conjunction with the fact that none of the claims in Petitioner's first or second Rule 61 motions asserted any challenge to the drug identity, substance or weight, (D.I. 15-11 at 8-13; D.I. 16-3), along with the fact that he did not allege actual innocence in any of his state proceedings or in the instant proceeding, the Court concludes that the OCME scandal does not constitute a "vital fact" for Claim Four triggering a later starting date for AEDPA's limitations period. As such, the one-year period of limitations for Claim Four also began to run when Petitioner's conviction became final under § 2244(d)(1)(A).[7]

---

samples of cocaine weighing 78.30 grams, for a total of 246.01 grams. (D.I. 15-18 at 41-42) The police report described field testing of the two bags found in a car weighing 170 grams and three bags found in an apartment weighing 57.8 grams, for a total of 227.8 grams. (D.I. 15-15 at 1-2; D.I. 15-18 at 38) Petitioner filed a *pro se* letter motion to suppress the evidence on November 16, 2010 (D.I. 16-4 at 2) and, after discussing the situation with Petitioner, defense counsel filed an amended suppression motion on November 18, 2010 (D.I. 16-2; D.I. 16-4 at 2). The suppression hearing was held on November 29, 2010.

[7]The State relies on *Harmon v. Johnson*, 2016 WL 183899, at *3 (D. Del. Jan. 14, 2016), to support its argument that § 2244(d)(1)(D) is inapplicable and cannot trigger a later starting date in this case. While the Court agrees that § 2244(d)(1)(D) is inapplicable, this conclusion is not based on *Harmon*. Harmon argued that his conviction should be vacated because the State violated *Brady v. Maryland* by failing to disclose its knowledge of the OCME drug evidence scandal during his plea process and by waiting until long after his conviction in 2012 to disclose the tampering. *See Harmon*, 2016 WL 183899, at*2-3. However, since the drug evidence in *Harmon* was never sent to the OCME for

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the judgment of conviction becomes final, and the one-year period begins to run, upon expiration of the period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565, 575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999). Here, the Delaware Superior Court sentenced Petitioner on December 2, 2011 and he did not appeal that judgment. Therefore, Petitioner's conviction became final on January 2, 2012. *See* Del. Supr. Ct. R. 6(a)(ii) (establishing 30-day period for timely filing of notice of appeal). Applying the one-year limitations period to that date, Petitioner had until January 3, 2013 to timely file his Petition. *See Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a) and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D. Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run, which is day after triggering event).

Petitioner did not file the instant Petition until July 10, 2015,[1] approximately three years and seven months after the expiration of AEDPA's statute of limitations. Thus, all four Claims are time-barred, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

### 1. Statutory tolling

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the action is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of

---

testing, the Court found that the revelation of the OCME scandal in 2014 could not constitute a new factual predicate for Harmon's substantive *Brady* claim. *Id.* Here, unlike Harmon, Petitioner argues that the alleged lack of knowledge of the OCME misconduct was material to the success of his suppression motion. In addition, the drug evidence in Petitioner's case was sent to the OCME for further testing after the initial field test, and Petitioner received a copy of the OCME report prior to filing the suppression motion.

AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000); *Price v. Taylor*, 2002 WL 31107363, at *2 (D. Del. Sept. 23, 2002). However, the limitations period is not tolled during the 90 days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001). In addition, a post-conviction motion that is untimely under state law has no statutory tolling effect because it is not considered properly filed for § 2244(d)(2) purposes. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

Petitioner filed his first Rule 61 motion on December 30, 2010, before his judgment of conviction was final, and the Superior Court denied the motion on June 23, 2011. Since Petitioner did not appeal that decision, the Rule 61 motion tolled the limitations period through July 25, 2011, which includes the 30-day appeal period.[8] The limitations clock started to run on July 26, 2011, and ran the entire one-year period without interruption until it expired on July 25, 2012. Petitioner's March 22, 2013 motion for modification of sentence and his March 18, 2014 Rule 61 motion do not statutorily toll the limitations period because the one-year period had already expired. Thus, even with the applicable statutory tolling, Claims One through Four are time-barred, unless equitable tolling is available.

### 2. Equitable tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *See id.* As for the extraordinary circumstance requirement, "the

---

[8]The appeal period actually expired on July 24, 2011, which was a Sunday. Therefore, the time to appeal extended through the end of the day on Monday, July 25, 2011. *See* Del. Supr. Ct. R. 11(a).

relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 400 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance . . . and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d. Cir. 2013).

Petitioner does not assert, and the Court does not discern, any reason to equitably toll the limitations period for Claims One and Three. To the extent Petitioner attempts to trigger equitable tolling for Claims Two and Four by asserting that the State cannot prove that there was no evidence tampering in this case in light of the OCME scandal, the attempt is unavailing. In Claim Two, Petitioner contends that he would not have entered a guilty plea had he known about the drug weight discrepancies as set forth in the police report and lab report, and that the OCME evidence mishandling scandal demonstrates that the drug evidence in his case was tampered with. However, Petitioner had access to both the lab and police reports before he pled guilty in 2010, which means he also had access to any drug weight discrepancies contained in those reports. Consequently, he could have presented Claim Two prior to learning about the OCME evidence mishandling scandal, which was also before he filed the instant Petition in July 2015. In turn, the fact that Petitioner never challenged the reliability of the drug evidence during his criminal proceeding or his first post-conviction proceeding precludes equitable tolling for Claim Four.

Finally, to the extent Petitioner's untimely filing was the result of his own miscalculation of the one-year filing period, such mistakes do not warrant equitably tolling the limitations period. *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D. Del. May 14, 2004). For all of these reasons, the

Court concludes that equitable tolling is not available for Claims One, Two, Three, and Four on the facts presented by Petitioner. Accordingly, the Court will dismiss these four Claims as time-barred.

## VI.   ALTERNATE DISMISSAL OF CLAIM FOUR AS MERITLESS

The question as to whether the OCME evidence scandal constitutes a factual predicate/vital fact underlying Claim Four is an issue of first impression for this Court. The Court acknowledges it may have been too strict in limiting the definition of "vital fact" in this case by focusing on the subject matter of the suppression motion filed by Petitioner rather than on the fact that Petitioner actually filed a suppression motion. In other words, an argument can be made for viewing Petitioner's contention that he would have included the existence of evidence mishandling at the OCME in his suppression motion as an additional challenge to the admissibility of the evidence as qualifying the OCME scandal as a vital fact underlying Claim Four. Since the statute of limitations does not constitute a jurisdictional bar to the Court's review,[9] the Court will alternatively review Claim Four as though it had been timely filed.

Liberally construed, Claim Four asserts that the State violated *Brady v. Maryland* by failing to inform him about the OCME misconduct prior to his suppression hearing, because including this impeachment evidence in the suppression motion would have resulted in having the drug evidence suppressed and the charges in his case dismissed. In his second Rule 61 motion, filed on March 13, 2014, Petitioner contended that the trial court violated his due process rights by denying his motion to suppress because the police illegally seized the drug evidence without a valid search warrant. (D.I. 3 at 109-10) The Superior Court summarily dismissed this argument on April 2, 2014, under Rule 61(i)(4) as formerly adjudicated. (D.I. 16-1 at 6) Petitioner filed a notice of appeal. Subsequent to that filing, the State provided Petitioner with supplemental discovery, namely, that two individuals

---

[9] *See Day v. McDonough*, 547 U.S. 198 (2006).

employed by the OCME who were in the chain of custody for the drug evidence in his case had been indicted on charges arising from a criminal investigation into evidence tampering. *See Carrero*, 2015 WL 3367940, at *2. The State also informed the Delaware Supreme Court about the chain of custody report, and stated that there was no evidence that the drugs in this case had been compromised. *See Carrero*, 2015 WL 3367940, at *2. Given this development, the Delaware Supreme Court stayed Petitioner's appeal pending the outcome in another appeal with a similar fact pattern which also involved the OCME evidence mishandling scandal: *Brown v. State*, 108 A.3d 1201 (Del. 2015).

The Delaware Supreme Court issued its decision in *Brown* on January 23, 2015. After ruling on *Brown*, the Delaware Supreme Court directed Petitioner and the State to file supplemental memoranda addressing the applicability of *Brown* to his post-conviction appeal. *See Carrero*, 2015 WL 3367940, at *2. In his supplemental memorandum, Petitioner mentioned the OCME scandal and raised the argument asserted in Claim Four of this proceeding, namely, that "the search originally executed was done illegally, then the alleged evidence once illegally obtained was then tampered with and discrepancies have arisen." (D.I. 15-14 at 3) According to Petitioner, the State, defense counsel, and the trial court had access to information about discrepancies and evidence tampering, and, therefore, his rights were violated when the suppression hearing went forward. (*Id.*) In his second supplemental memorandum, Petitioner asserted that everyone but him knew about the discrepancies in the reports,[10] that the search was done illegally, and that the evidence obtained was tainted. (D.I. 15-16 at 6) Petitioner also alleged that his "plea was involuntary due to an unfair process created by the misrepresentation by the State and by his own counsel, that the OCME Lab

---

[10]As already noted, the OCME report indicated two samples of cocaine weighing 167.71 grams, and three samples of cocaine weighing 78.30 grams, for a total of 246.01 grams. The police report described field testing of the two bags found in a car weighing 170 grams and three bags found in an apartment weighing 57.8 grams, for a total of 227.8 grams. (D.I. 15-15 at 1-2)

properly handled and tested substances sent there.  If the knowledge of the misconduct and the discrepancies at the OCME had been known to [Petitioner], it would have changed his opinion." (D.I. 15-16 at 7)

Applying *Brown*, the Delaware Supreme Court affirmed the Superior Court's denial of the Rule 61 motion as to Petitioner's argument that his plea was rendered involuntary by the State's failure to disclose the OCME evidence scandal. *See Carrero*, 2015 WL 3367940, at *2.  Then, after holding that Petitioner's guilty plea was knowing, voluntary, and intelligent, the Delaware Supreme Court stated that it was not reaching Petitioner's "other claims challenging the Superior Court's ruling on his suppression motion and alleging ineffective assistance of counsel and prosecutor misconduct during the plea proceedings. . . . . The claims are procedurally barred [under Rule 61(i)(4)] and [Petitioner] failed to overcome the procedural hurdles." *Carrero*, 2015 WL 3367940, at *2 n.10.

### A. Standard of Review

Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, on federal habeas review the fact that the claim was formerly adjudicated means that it was decided on the merits. *See Trice v. Pierce*, 2016 WL 2771123, at *4 n.4 (D. Del. May 13, 2016). When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).  Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. *See* 28 U.S.C.

§ 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied"; as explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011).

Finally, when reviewing a habeas claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *see also Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *see also Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## B. Discussion

The Delaware Supreme Court denied Claim Four as procedurally barred under Rule 61(i)(4), which means that the Court must treat the Claim as having been adjudicated on the merits. Consequently, Claim Four will only warrant habeas relief if the Delaware state courts' rejection of the argument was either contrary to, or an unreasonable application of, clearly established federal law.

Pursuant to *Brady v. Maryland*, "[p]rosecutors have an affirmative duty 'to disclose [*Brady*] evidence . . . even though there has been no request [for the evidence] by the accused,' which may include evidence known only to police." *Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 284 (3d Cir. 2016). "To comply with *Brady*, prosecutors must 'learn of any favorable evidence known to the

17

others acting on the government's behalf.'" *Id.*  In order to prevail on a *Brady v. Maryland* claim, a petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment[11] value; (2) the prosecution suppressed the evidence, "either willfully or inadvertently;" and (3) the evidence was material.[12]  *See Strickler v. Greene,* 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell,* 387 F.3d 210, 252 (3d Cir. 2004).

The evidence mishandling at the OCME would have constituted impeachment evidence in this case.  *See Brown,* 108 A.3d at 1205-06, n.30 (holding that OCME evidence mishandling investigation constitutes impeachment material in *Brown*'s case and in fact patterns like it); *State v. Miller,* 2017 WL 1969780, at *6 (Del. Super. Ct. May 11, 2017) (stating that all of hundreds of Rule 61 motions asserting similar *Brady v. Maryland* claims argue that State suppressed valuable impeachment evidence when it failed to disclose that drugs submitted to OCME were being tampered with and/or stolen from lab); *see also United States v. Wilkins,* 943 F. Supp. 2d 248, (D. Mass. 2013), *aff'd sub nom. Wilkins v. United States,* 754 F.3d 24 (1st Cir. 2014).  Circuit courts are split on the issue whether *Brady v. Maryland* requires disclosure of impeachment evidence prior to suppression hearings.  *See United States v. Garcia,* 2017 WL 2290963, at *24-25 (D.N.M. May 2, 2017) (collecting cases); *United States v. Stott,* 245 F.3d 890, 901 (7th Cir. 2001).  However, in *United States v.*

---

[11]"[I]mpeachment information is special in relation to the *fairness of a trial,* not in respect to whether a plea is *voluntary.*"  *United States v. Ruiz,* 536 U.S. 622, 629 (2002) (emphasis in original). Evidence that can be used to impeach a government's witness is deemed to be favorable to the defense for the purpose of *Brady v. Maryland. See United States v. Perdomo,* 929 F.2d 967, 971 (3d Cir. 1991) ("We agree that the favorability of the evidence is unquestionable.  [The witness'] undisclosed criminal record constitutes exculpatory evidence that the defense could have used to impeach [him] on cross-examination.").

[12]A petitioner demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result."  *Kyles v. Whitley,* 514 U.S. 419, 434 (1995).  "[A] reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial."  *Id.*

*Ruiz*, the Supreme Court held that a prosecutor does not have to disclose impeachment evidence before the entry of a guilty plea. *See United States v. Ruiz*, 536 U.S. 622, 623 (2002). Given *Ruiz*, it is highly unlikely that the Supreme Court would require a prosecutor to disclose impeachment evidence before a suppression hearing. Nevertheless, at a minimum, the circuit split demonstrates that there is no clearly established federal law requiring impeachment evidence to be disclosed prior to a suppression hearing. *See Garcia*, 2017 WL 2290963, at *25; *Stott*, 245 F.3d at 902. In the absence of controlling Supreme Court precedent on this issue, the Court concludes that the Delaware Supreme Court's denial of Claim Four does not warrant relief under § 2254(d). *See Carey v. Musladin*, 549 U.S. 70, 76-77 (2006) (holding that lack of Supreme Court holding on specific issue precludes finding that state court decision on that issue was contrary to or unreasonable application of clearly established federal law). Accordingly, the Court will alternatively deny Claim Four as meritless.

## VII.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court declines to issue a certificate of appealability.

## VIII.   CONCLUSION

For the reasons discussed, Petitioner's Application For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is denied.  An appropriate Order will be entered.